## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**CHRISTOPHER J. CODE,**

    **1726 Fiddlers Ridge Dr.**
    **Fleming Island, FL 32003**

               **Plaintiff,**

      **v.**

**THE HONORABLE JOHN M. McHUGH,**
**SECRETARY OF THE ARMY**

    **101 Army Pentagon**
    **Washington, DC 20310-0101**

              **Defendant**

**Case. No.  1:15-cv-00031**

## COMPLAINT

Plaintiff Christopher J. Code, by counsel, brings this action seeking judicial review of a final decision of the Army Board for Correction of Military Records denying Plaintiff's request to correct his military records and determine that he does not owe a debt of $44,200 to the Department of Defense.  In support of his complaint, Plaintiff states as follows:

### SUMMARY

In September 2010, the Defense Finance and Accounting Service ("DFAS") sent Plaintiff a letter declaring that he owed a debt to the Department of Defense ("DoD") in the amount of $44,200.00, and commenced collection of that debt.  The letter indicated that the debt was due to larceny as reported by an Army Criminal Investigation Command ("CID") Report of Investigation ("ROI").  The letter was Plaintiff's first notice of the alleged debt and the determination that he had committed any crime—he had been given no prior notice or

opportunity to respond to or contest that determination prior to collection of the debt by DFAS.

The ROI concerned an investigation of Plaintiff's enrollment of his children in a DoD school in Puerto Rico in 2007, more than 3 years earlier.  It was alleged that Plaintiff had fraudulently enrolled his children in the school by providing false information on the official application.  The ROI concluded that Plaintiff had likely committed the alleged crime, resulting in a loss to the government.  This conclusion, however, was totally unsupported by any credible evidence—the information Plaintiff submitted on the application was indisputably true and accurate.  Notwithstanding the lack of evidence, and although the investigation resulted in no criminal prosecution, court martial, or any disciplinary or adverse administrative action against Plaintiff, the ROI was referred to DFAS for collection as a debt to the government.  This action was taken without any legal authority, and without affording Plaintiff any notice or opportunity to dispute the ROI's findings, in clear violation of Plaintiff's constitutional due process rights.

Pursuant to the Privacy Act, Plaintiff sought to amend the ROI and challenged the legality of the referral of the ROI to DFAS for collection.  CID denied Plaintiff's request, and Plaintiff appealed that decision to the Army Board for Correction of Military Records ("ABCMR"), which affirmed.  This action followed.

As a result of the Army's unlawful actions, Plaintiff's promotion in the Navy Individual Ready Reserves has been delayed or denied, Plaintiff's credit rating has been damaged causing him to be turned down for a home loan, Plaintiff's eligibility to maintain a security clearance will be adversely affected, and Plaintiff has been denied reimbursement for legitimate expenses by the Government.  Because the decision of the ABCMR not to correct these errors and injustices is arbitrary and capricious, as well as contrary to law, this Court must reverse the Board's decision and grant the relief Plaintiff hereby requests.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under federal statutes and military regulations.  Venue is proper because Defendant resides in the District of Columbia.

2.      The federal statute upon which jurisdiction is based is the Administrative Procedures Act, 5 U.S.C. § 701 *et seq*. ("APA"), which authorizes this Court to review the decisions of the Army Board for Correction of Military Records ("ABCMR").

## PARTIES

3.      Plaintiff was a Lieutenant in the Navy until his honorable discharge in February 2009, and currently is a member of the Navy Individual Ready Reserves ("IRR").  Plaintiff is employed full-time as a civilian with the Navy in Jacksonville, Florida.  He resides at 1726 Fiddlers Ridge Dr., Fleming Island, FL 32003.

4.      Defendant is the Honorable John M. McHugh, Secretary of the Army, on whose behalf the ABCMR acts.  10 U.S.C. § 1552.  Defendant is deemed to reside at the address provided in the caption above.

## STATUTE OF LIMITATIONS
## AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      On or about August 12, 2014, the ABCMR entered a final decision, identified as Docket No. AR20130017919, denying Plaintiff's request to correct his military records.  A copy of that decision is attached as Exhibit A.

6.      Plaintiff has exhausted his administrative remedies.

7.      28 U.S.C. § 2501 prescribes a six-year period of limitations from the date the claim accrues.  Plaintiff's claim accrued no later than August 12, 2014, when the ABCMR issued a final decision on his application; therefore, Plaintiff's complaint is timely.

## STATEMENT OF FACTS

### A.      Plaintiff's Initial Orders

8.      On January 24, 2005, Plaintiff was issued official Permanent Change of Station

Orders ("PCS Orders") requiring him to report to the Military Entrance Processing Station

located at Ft. Buchanan, San Juan, Puerto Rico ("San Juan MEPS") as his permanent duty station

no later than August 2005, with a Projected Rotation Date ("PRD") of July 2008.

9.      During his assignment to San Juan MEPS, Plaintiff resided off the base in private

housing with his wife and three dependent children.

10.      Plaintiff enrolled his children at a DoD Domestic Dependent Elementary and

Secondary School ("DDESS") Arrangement that was located on Ft. Buchanan.

11.      Under DoD Instruction 1342.26, the applicable regulation governing eligibility

requirements for DDESS Arrangements, Plaintiff's children were eligible to attend the school at

Ft. Buchanan free of tuition, provided there was space available,[1] because Plaintiff was on active

duty and assigned to the base as his permanent duty station by official orders.  DoDI 1342.26, ¶¶

6.2.2 & 6.2.2.1, attached as Exhibit B.

12.      At all relevant times there was space available at the Ft. Buchanan school, and

Plaintiff's children attended the school for the 2005-2006, and the 2006-2007 terms without

charge.

### B.      Re-enrollment at the Ft. Buchanan DDESS for the 2007-2008 School Term

13.      The Ft. Buchanan school conducted enrollment for the 2007-2008 school year

during the Spring of 2007.

---

[1]      The regulation defines "space available" to mean that the Director, DoD DDESS,
or designee has determined that the school has adequate staff, facilities, and other resources to
permit the enrollment of students other than those of military members or civilian employees
occupying permanent living quarters on the base.  DoDI 1342.26, ¶ E1.1.5.

14.     In early March of 2007, before he re-enrolled his children, Plaintiff was told that he would be issued new PCS Orders transferring him out of Ft. Buchanan prior to the expiration of his current orders.

15.     Plaintiff did not want to leave Puerto Rico for family related reasons. Additionally, his command considered him an invaluable asset and did not want to lose him.  On the recommendation of his commanding officer, and with his full support, on March 12, 2007 Plaintiff requested an extension of his tour at Ft. Buchanan through August 30, 2008.

16.     On April 30, 2007, Plaintiff re-enrolled his children at the Ft. Buchanan school for the 2007-2008 school term.

17.     At that time, Plaintiff informed the Registrar about the possible change in his status, inquiring about the effect new PCS Orders may have on his children's eligibility to attend the school.  The Registrar advised Plaintiff that his children's eligibility was determined by his official PCS Orders at the time of enrollment, which in Plaintiff's case was his original 2005 orders assigning him to San Juan MEPS through July 2008.

18.     The Registrar's advice was consistent with applicable DoD regulation, which states:

> Eligibility [for enrollment] will be based upon the permanent duty
> station to which the military sponsor is assigned by official orders.

DoDI 1342.26, ¶ 6.3.3.

19.     After speaking with the Registrar, on April 30, 2007 Plaintiff submitted his official application for enrollment of his children.  The standard application form asked Plaintiff to indicate by checking the appropriate box whether he was "Active Duty", and if so, then asked him to insert the date that his official orders expired.  Consistent with applicable regulation and the advice of the Registrar, Plaintiff indicated that he was Active Duty and that his official orders

expired on July 2008.

20.     The information Plaintiff provided on the April 30, 2007 enrollment application regarding his official orders was true and accurate.

21.     The application form also contained a statement that read "If my orders change / terminate before the start of SY 2007 - 2008, I will notify the Registrar immediately," which was followed by a line for the applicant's signature.  Plaintiff inadvertently submitted the form without his signature on that line.  The Registrar nevertheless accepted the application and enrolled Plaintiff's children into the Ft. Buchanan school for the 2007-2008 school term.

**C.     Plaintiff's Request For Extension Of His Duty Orders Is Denied**

22.     On or about April 26, 2007, the Navy Personnel Command denied Plaintiff's request to extend his current PCS Orders.

23.     Although the denial letter was issued before Plaintiff submitted the enrollment application, he had no notice or knowledge of the denial when he enrolled his children on April 30, 2007.

24.     The denial of Plaintiff's extension request did not alter or change his official PCS Orders, which still assigned him to San Juan MEPS through July 2008, and therefore had no bearing on the eligibility of his children to attend the Ft. Buchanan school for the 2007-2008 term.

**D.     Plaintiff Receives New PCS Orders**

25.     On May 23, 2007, approximately a month following the enrollment of his children, Plaintiff was issued new PCS Orders requiring him to report to Naval Air Station, Kingsville, Texas ("NAS Kingsville") as his permanent duty station no later than June 2007.

26.     Upon receipt of his new PCS Orders, Plaintiff verbally notified the Registrar of the Ft. Buchanan school that his status had changed.  The Registrar advised Plaintiff that because

his children were validly enrolled based on Plaintiff's official orders as of the date of enrollment on April 30, 2007, his children could remain at the Ft. Buchanan school for the 2007-2008 school term.

27.     The Registrar's advice was consistent with applicable DoD regulations, which stated:

> If the status of the sponsor of a currently enrolled student changes so that the child would no longer be eligible for enrollment in a DDESS Arrangement, enrollment may continue for the remainder of the school year.

DoDI 1342.26, ¶ 6.3.7.

28.     In June 2007, Plaintiff reported to NAS Kingsville for duty.  His wife and children remained in Puerto Rico.

### E.     CID Investigation

29.     In January 2008 CID learned that Plaintiff's children were attending the DDESS in Ft. Buchanan Puerto Rico while Plaintiff was stationed at NAS Kingsville.  CID believed this to be unlawful.

30.     On its own initiative, CID conducted a lengthy investigation into the enrollment that spanned from 2008 to 2011.

31.     At the conclusion of their investigation, the CID issued a final ROI, which concluded that:

> (a)     Plaintiff knowingly falsified and submitted the DDESS enrollment application "4 days after his Permanent Change of Station (PCS) extension request was denied, transferring him from Puerto Rico to Kingsville, TX";
>
> (b)     those facts constituted probable cause to believe that Plaintiff committed the crimes of False Official Statement (U.S.M.J., art. 107) and Larceny (U.S.M.J., art. 121); and
>
> (c)     the Government suffered a loss of $44,200.

32.     Contrary to CID's unsupported presumption, the denial of Plaintiff's PCS extension request did not constitute a change in Plaintiff's official orders or otherwise effect a transfer of Plaintiff from Puerto Rico to Texas.

33.     The lynchpin for CID's entire case against Plaintiff was its conclusion that the information he provided on the enrollment application, that his current official orders expired in July 2008, was knowingly false.  Notwithstanding that Plaintiff's official PCS Orders expressly stated that his tour was through July 2008, and the absence of any document or record establishing otherwise, CID determined that Plaintiff's orders were instead set to expire in July 2007, from which it then concluded that Plaintiff had knowingly falsified the expiration date on the enrollment application in order enroll his children in the Ft. Buchanan school.  CID was so certain of this conclusion that it did not investigate any events or circumstances in connection with the enrollment that occurred after April 30, 2007.

34.     CID's investigation was by no means thorough.   The ROI reveals that investigation was less an effort to objectively determine what had happened than it was a mission to substantiate a predetermined conclusion that Plaintiff had fraudulently enrolled his children in the Ft. Buchanan school.

35.     The ROI's conclusion relied primarily upon information or opinions from 3 witnesses: (i) an individual identified as being associated with MEPS San Juan; (ii) the Registrar at the Ft. Buchanan school; and (iii) an Assistant General Counsel for the Department of Defense Education Association ("DoDEA").

36.     On January 25, 2008, the MEPS witness told CID that Plaintiff's original assignment to MEPS San Juan was a 24-month tour, expiring during the Summer of 2007.  No foundation for the witness's statement or his or her knowledge of Plaintiff's orders was given,

and the information the witness gave was contradicted by Plaintiff's official PCS Orders, as well as other documentation, which clearly established that Plaintiff was assigned to MEPS San Juan through July 2008.   The ROI does not even address, much less explain this obvious contradiction.

37.     Armed with this misinformation, CID then sought an opinion from the Registrar about Plaintiff's eligibility to enroll his children in Ft. Buchanan school.  After presenting her with "the scenario involving [Plaintiff]," which ostensibly included the misrepresentation regarding Plaintiff's orders, the Registrar advised that Plaintiff's children could not attend the school since he was no longer assigned or stationed in Puerto Rico.  The report of the interview revealed that the Registrar's opinion was based entirely on the hypothetical factual scenario presented by the investigator, and not on actual documents or the Registrar's personal knowledge or recollections of her interactions with Plaintiff.  Notably, the CID agent did not ask the Registrar any questions regarding events or circumstances concerning the enrollment that ocurred after April 30, 2007.

38.     Months later on July 2, 2008, CID sought a similar opinion from the Assistant General Counsel for DoDEA.  Again, rather than conduct an objective interview, the CID agent presented the witness with a hypothetical factual scenario, and solicited his or her opinion based on that scenario.  The agent informed the witness that Plaintiff was denied his extension request on April 26, 2007, and that he then "falsely stated" on the enrollment application that his orders expired in July 2008.  Based on the agent's misrepresentation, the witness offered that Plaintiff's children were not eligible for enrollment in the Ft. Buchanan school.

39.     On December 4, 2008, the U.S. Attorney's Office, San Juan, Puerto Rico, declined prosecution of Plaintiff, referring any further action to DoD or Plaintiff's chain of

command.

40.     No disciplinary or adverse administrative action was ever taken by Plaintiff's

chain of command against him as a result of the CID investigation.

**F.     CID Unilaterally Determines That Plaintiff Owes The Government A Debt
And Refers It To DFAS For Collection**

41.     At some time prior to September 2010, CID independently determined that

probable cause existed that Plaintiff had fraudulently enrolled his children in the Ft. Buchanan

school resulting in a loss to the government of $44,200.00.  This determination was made

without giving Plaintiff any notice or opportunity to be heard at meaningful time or in a

meaningful manner.

42.     On or about September 28, 2010, even before issuing the final ROI, CID

"presented documentation and a structured time line of events" to DFAS with the intent that

DFAS pursue collection of the $44,200.00 debt.  DFAS "accepted financial responsibility for the

$44,200.00 loss" and agreed to collect the debt from Plaintiff.  The referral of the ROI to DFAS

was done without giving Plaintiff any notice or opportunity to be heard at a meaningful time or

in a meaningful manner.

43.     On September 30, 2010, DFAS issued a letter to Plaintiff advising him that DoD

had assessed him with a debt in the amount of $44,200.00 based on the larceny charge in the

ROI.  The DFAS letter was the first notice Plaintiff received regarding the disposition of the CID

investigation, or that he had been determined to be indebted to DoD.

44.     On October 20, 2010, the "Agent in Charge" of the Florida Fraud Resident

Agency ("FFRA") branch of CID improperly executed a Commander's Report of Disciplinary

Action Form DA 4833 ("CRDA") with respect to Plaintiff, reflecting that formal administrative

action had been taken against Plaintiff by his chain of command in response to the ROI in the

form of restitution to the Government in the amount of the alleged loss ($44,200.00).

45.     The agent was not in Plaintiff's chain of command, and under applicable Army regulations had no legal authority or justification to complete the CRDA.  The CID agent completed the CRDA without giving Plaintiff any notice or opportunity to be heard at a meaningful time or in a meaningful manner.

46.     The existence of the CRDA was first discovered by Plaintiff 2 years later in connection with Plaintiff's being withheld from promotion to Lieutenant Commander in the IRR in Fiscal Year 2013.  Plaintiff was advised by the Promotion Selection Board that, in addition to the ROI, the CRDA was considered potentially adverse information that affected his qualification for promotion.

47.     In March 2011, after nearly a year of collecting information relating to the ROI, Plaintiff formally protested the debt, which by that time had been referred to the Department of Treasury Debt Management Services.  Treasury responded in October 2011, stating that the debt was valid.

G.      **Plaintiff's Attempts To Correct CID's Mistaken Belief About The Term Of Plaintiff's Assignment In Puerto Rico - Privacy Act Request For Amendment Of Records**

48.     In January 2013, pursuant to the Privacy Act, Plaintiff formally requested CID to amend the ROI conduct an operational review in connection with the referral of the ROI to DFAS and the execution of the CRDA.  Specifically, Plaintiff requested that the ROI be amended to reflect the charges as "unfounded"; that the CID remove his name from the title block; that the CID remove his name from the Defense Central Index of Investigations ("DCII"); that CID direct DFAS to cancel the debt; and that the CRDA be expunged.

49.     On April 9, 2013, CID denied Plaintiff's request for amendment.  Parroting the language of the applicable standard, the decision found that credible evidence existed to support

the CID's determinations that Plaintiff had committed the alleged offenses, and that there was no question regarding mistaken identity.  The letter stated it was a final decision constituting an exhaustion of Plaintiff's remedies entitling him to an appeal at the ABCMR.

50.     On April 11, 2013, Plaintiff responded to CID regarding the final decision, and requesting clarification with respect to the requested operational review of the referral of the ROI to DFAS and the completion of the CRDA.

51.     On May 3, 2013, CID responded, indicating that the review had been conducted pursuant to the amendment request, and was included in the response of April 9.  The letter reiterated that CID considered its investigation of Plaintiff "to be operationally and legally sound."  Further, with respect to the referral of the ROI to DFAS, CID responded as follows:

> The United States Army Criminal Investigation Command (USACIDC) does not direct or participate in the collection of debts. CID offices are required to submit copies of reports of investigation involving the loss of U.S. Government funds to the Defense Finance and Accounting Service (DFAS). However, USACIDC has no role in pursuit of debt collection by DFAS, nor their decision to do so. All appeals in regard to debt collection must be submitted to DFAS.

52.     CID's position contradicted DFAS's statement to Plaintiff, sent nearly a year earlier on April 20, 2012, that the debt was based on the ROI and that he would "need to work with the CID office that completed the investigation in order to have [his] protest heard. *This debt remains valid until the determination has been overturned and the debt has been canceled by the debt originator*" (emphasis added).

## H.     Appeal To The ABCMR

53.     On September 26, 2013, Plaintiff submitted his petition for the correction of his military records to the ABCMR, appealing the adverse decision of the CID with respect to his Privacy Act request.  Plaintiff requested the following relief from the Board:

(a)     that the ROI be expunged or alternatively amended to show the offenses as "unfounded";

(b)     that the CRDA be expunged; and

(c)     that the debt assessed by DFAS be cancelled.

54.     In its appeal to the ABCMR, Plaintiff demonstrated clearly and convincingly that the ROI was materially flawed and did not reasonably support the conclusions reached by CID. Specifically, Plaintiff established the following points:

(a)     There was no credible evidence to establish any element of the offense of False Official Statement because all of the information on the enrollment application was true and accurate—Plaintiff's official PCS Orders did not expire until July 2008, and although the denial of Plaintiff's request to extend his tour had no bearing on those orders or his children's DDESS eligibility, there was no evidence that Plaintiff had notice or knowledge of that denial when he submitted the enrollment form.

(b)     The offense of Larceny was entirely inconsistent with allegations; specifically, that Larceny required proof that Plaintiff wrongfully appropriated or acquired possession of property or funds.  There was never any allegation that Plaintiff stole property or funds and no credible evidence to support such an allegation.

(c)     The completion of the CRDA by a CID agent who was not in Plaintiff's chain of command was in direct contravention to applicable Army regulations, and therefore invalid.

(d)     The referral of the ROI to DFAS for collection was invalid because there was no authority permitting such action.

(e)     The probable cause determination and referral of the ROI to DFAS for collection without giving Plaintiff any notice or opportunity to be heard at a meaningful time and in a meaningful manner, including the right to rebut evidence supporting the action, was in violation of Plaintiff's constitutional right to due process.

55.     On August 12, 2014, the ABCMR declined Plaintiff's requests and affirmed the CID's decision to deny an amendment of the ROI.

56.     The ABCMR's decision was rife with material errors, including the following:

(a)     The ABCMR cited and applied the wrong regulation to state the applicable policy governing DDESS eligibility.  The ABCMR stated that

- 13 -

DoDEA Regulation 1342.13 was the applicable regulation; however, that regulation governs "Eligibility Requirements for Education of Elementary and Secondary School-age Dependents in *Overseas Areas*" (emphasis added).  Since the Ft. Buchanan school was a *domestic* school located in Puerto Rico, a Commonwealth of the United States, the cited regulation inapplicable.

(b)     The ABCMR disregarded the applicable legal standard and applied an unreasonable burden of proof with respect to the amendment of the ROI. Instead of determining whether the facts established by the ROI provided credible evidence to support the alleged offenses, the Board imposed on Plaintiff an obligation to provide additional evidence beyond the scope of the investigation to corroborate his unrebutted testimony, or to otherwise prove that the Registrar failed to follow applicable DDESS policy (which the Board incorrectly cited).

(c)     The ABCMR ignored the presumption of administrative regularity and required Plaintiff to disprove a potential *irregularity* that may have explained the CRDA.  The Board agreed that the applicable regulation required Plaintiff's commander to complete the CRDA, and that it was improper for the CID agent who was not in his chain of command to have done so; however, the Board cited Plaintiff's failure to produce evidence *disproving* that Plaintiff's commander delegated his authority to the CID agent or otherwise authorized him to complete the CRDA on his behalf, even though such action is impermissible.  The Board stated that without such evidence, "there was no way to determine that an error or injustice exists."

(d)     The ABCMR failed to address the referral of the ROI to DFAS despite CID's issuance of a final decision.

## LEGAL CLAIMS

57.     The ABCMR's final decision was arbitrary and capricious, an abuse of its discretion, or otherwise not in accordance with law in the following respects:

**I.     The Board's Decision To Deny Plaintiff's Request To Amend His Military Records Was Arbitrary and Capricious Where It Relied On An Inapplicable DoDEA Regulation To Determine The Relevant DDESS Policy.**

58.     Plaintiff restates and incorporates by reference Paragraphs 1 through 57 as if fully set forth.

59.     In denying Plaintiff's request for relief, the ABCMR cited Plaintiff's failure to

produce evidence establishing that the Registrar failed to follow the applicable DDESS policy, a matter which the CID had not investigated.

60.     The ABCMR asserted that Plaintiff was obligated to present evidence that the Registrar broke protocol, stating that "lacking evidence to the contrary, it must be presumed the Registrar followed applicable DDESS policy."

61.     The ABCMR stated that the applicable policy was supplied by DoDEA Regulation 1342.13, which provides that Plaintiff's children were not eligible to receive a *tuition-free*, *space-required* education from the Ft. Buchanan school without the express approval from the Director.

62.     In denying Plaintiff's request for relief, the ABCMR relied on the lack of evidence demonstrating that Plaintiff sought or received such approval.

63.     The ABCMR's consideration of the policy articulated by DoDEA Regulation 1342.13 was improper because it does not apply to or govern eligibility criteria for the DDESS Arrangement at Ft. Buchanan.

64.     DoDEA Regulation 1342.13 governs "Eligibility Requirements for Education of Elementary and Secondary School-age Dependents in *Overseas Areas*" (emphasis added).  The regulation defines "Overseas Areas" to be any area outside the United States, and specifically identifies the Commonwealth of Puerto Rico as part of the United States.

65.     Puerto Rico is not an Overseas Area, and therefore DoDEA Regulation 1342.13 is inapplicable.

66.     The ABCMR's presumption of administrative regularity in accordance with the policy articulated by DoDEA Regulation 1342.13 was clear legal error.

67.     Accordingly, the ABCMR's rejection of Plaintiff's request to amend the ROI was

arbitrary and capricious, and contrary to law.

II.    **The Board's Decision To Uphold The Finding Of Probable Cause That Plaintiff Committed The Offense Of False Official Statement Was Arbitrary And Capricious Where That Conclusion Ran Counter To The Evidence Before It And Relied On Factors Which Were Irrelevant To The Allegation.**

68.    Plaintiff restates and incorporates by reference Paragraphs 1 through 57 as if fully set forth.

69.    Plaintiff clearly and compellingly demonstrated that there was no credible evidence supporting the offense of False Official Statement in connection with his submission of the enrollment application.

70.    Plaintiff presented compelling and uncontroverted evidence that, at the time Plaintiff enrolled his children, the determination of their eligibility was "based upon the permanent duty station to which the military sponsor is assigned by official orders."  DoDI 1342.26, ¶6.3.3.

71.    Plaintiff presented compelling and uncontroverted evidence that, at the time Plaintiff enrolled his children, his official PCS Orders assigned him to permanent duty station at San Juan MEPS through July 2008.

72.    Plaintiff presented compelling and uncontroverted evidence that, at the time Plaintiff enrolled his children, the denial of his request to extend his tour had no effect on his children's eligibility to attend the 2007-2008 school term.

73.    Plaintiff presented compelling and uncontroverted evidence that, even if CID believed the denial of Plaintiff's extension request was significant, Plaintiff had neither notice nor knowledge that his request had been denied when he enrolled his children on April 30, 2007.

74.    The ABCMR's decision to uphold the finding of probable cause was based on the lack of evidence corroborating Plaintiff's version of events occurring subsequent to the

submission of the enrollment form on April 30, 2007.  Specifically, the Board found finding was supported by the absence of evidence:  (1) corroborating Plaintiff's unrebutted sworn testimony that he notified the Registrar about his new PCS Orders; or (2) demonstrating that the Registrar failed to follow the applicable DDESS policy, which the ABCMR incorrectly asserted was established by DoDEA Regulation 1342.13.

75.     The ABCMR's consideration of events and circumstances subsequent to the submission of the enrollment application was irrelevant because those facts were never investigated by CID and therefore beyond the scope of the ROI.  The sole allegation supporting the offense of False Official Statement was that Plaintiff provided false information on the official enrollment application.  Plaintiff's statement that he subsequently notified the Registrar about his new PCS Orders, and the actions the Registrar took in response to that statement had no bearing on the veracity of the information Plaintiff submitted on the enrollment application.

76.     The ABCMR's consideration of events and circumstances subsequent to the submission of the enrollment application was also irrelevant because there was no applicable regulation establishing Plaintiff's legal obligation to notify the Registrar of his new PCS Orders such that his failure to do so would support a criminal charge.  Further, CID never investigated whether Plaintiff subsequently notified the Registrar, and there are no facts in the ROI to rebut Plaintiff's sworn statement.  The Board effectively imposed on Plaintiff the patently unreasonable obligation to supplement CID's deficient investigation 6 years after the fact.

77.     The ABCMR had no factual or legal basis to sustain the finding that probable cause existed that Plaintiff committed the offense of False Official Statement by submitting the enrollment application based solely upon the lack of evidence corroborating Plaintiff's post-enrollment conduct or establishing that the Registrar failed to follow policy.

78.     The ABCMR's decision relied on factors that are irrelevant to the applicable inquiry presented by the request to amend the ROI, and it offered an explanation for its decision that runs counter to the evidence on record such that it cannot be ascribed to a difference in view or agency expertise.

79.     Accordingly, the ABCMR's denial of Plaintiff's request to amend the ROI was arbitrary and capricious, unsupported by substantial evidence, and contrary to law.

### III.     The Board's Decision To Uphold The Finding That Plaintiff Committed The Offense Of Larceny Was Arbitrary And Capricious Where It Was Unsupported By Any Rational Explanation.

80.     Plaintiff restates and incorporates by reference Paragraphs 1 through 57 as if fully set forth.

81.     Plaintiff clearly and compellingly demonstrated that there was no credible evidence supporting the offense of Larceny in connection with his submission of the enrollment application.

82.     Plaintiff presented compelling and uncontroverted evidence that he was never accused of taking, obtaining, or withholding from the possession of the Government any money, personal property, or article of value of any kind.

83.     Plaintiff presented compelling and uncontroverted evidence that he never took, obtained, or withheld from the possession of the Government any money, personal property, or article of value of any kind.

84.     Plaintiff clearly and compellingly demonstrated that, for the same reasons there was no credible evidence to support the charge of False Official Statement, there was no credible evidence that Plaintiff engaged in any wrongful conduct in connection with the enrollment of his children in the school.

85.     The ABCMR failed to provide a reasoned or adequate explanation of its decision

to sustain the ROI's finding of probable cause that Plaintiff committed the offense of Larceny in connection with the enrollment of his children at the DDESS Arrangement on Ft. Buchanan.

86.     Accordingly, the ABCMR's denial of Plaintiff's request to amend the ROI was arbitrary and capricious, unsupported by substantial evidence, and contrary to law.

**IV.     The Board's Decision To Uphold CID's Titling Determination Was Arbitrary And Capricious Where It Was Based On Facts Which Were Beyond The Scope Of The Applicable Standard.**

87.     Plaintiff restates and incorporates by reference Paragraphs 1 through 57 as if fully set forth.

88.     Plaintiff clearly and compellingly demonstrated that there was no credible evidence that he committed any offense in connection with the enrollment of his children at the Ft. Buchanan school.

89.     Plaintiff presented compelling and uncontroverted evidence that pursuant to the applicable regulation, the eligibility of his children to attend the Ft. Buchanan school was determined solely upon the permanent duty station to which Plaintiff was assigned by official PCS Orders.

90.     Plaintiff presented compelling and uncontroverted evidence that on April 30, 2007, his official PCS Orders assigned him to San Juan MEPS through July 2008.

91.     Plaintiff presented compelling and uncontroverted evidence that, at the time he submitted the enrollment application, the information on the enrollment application regarding Plaintiff's PCS Orders was true and accurate.

92.     Plaintiff presented compelling and uncontroverted evidence that under the applicable regulation his dependent children were eligible for a *tuition-free*, *space-available* education at the Ft. Buchanan school.

93.     Plaintiff presented compelling and uncontroverted evidence that there was no

regulation that established Plaintiff's legal obligation to notify the Registrar regarding any post-enrollment change in his status.

94.     Plaintiff presented compelling and uncontroverted evidence that he nevertheless did timely notify the Registrar regarding his PCS Orders issued May 23, 2007, assigning him to NAS Kingsville.

95.     In denying Plaintiff's request for relief, the ABCMR relied solely on the lack of evidence:  (1) corroborating Plaintiff's unrebutted sworn testimony that he notified the Registrar about his new PCS Orders; and (2) demonstrating that the Registrar failed to follow the applicable DDESS policy, which the ABCMR incorrectly asserted was established by DoDEA Regulation 1342.13.

96.     The ABCMR's requirement for evidence corroborating Plaintiff's unrebutted testimony that he notified the Registrar about his new PCS Orders was improper because those facts were never investigated by CID and therefore beyond the scope of the ROI.  The sole allegation supporting the offense of False Official Statement was that Plaintiff provided false information on the official enrollment application.  The applicable inquiry therefore was limited to the existence of credible evidence that Plaintiff did provide false information on the application.

97.     The ABCMR's requirement for evidence that the Registrar failed to follow applicable DDESS policy was improper because those facts were never investigated by CID and therefore beyond the scope of the ROI.  The sole allegation supporting the offense of False Official Statement was that Plaintiff provided false information on the official enrollment application.  The applicable inquiry therefore was limited to the existence of credible evidence that Plaintiff did provide false information on the application.

98.    The ABCMR's consideration of evidence concerning whether the Registrar failed to follow applicable DDESS policy was also invalid because it cited the wrong regulation—DoDEA Regulation 1342.13 did not determine the eligibility criteria for DDESS Arrangements in Puerto Rico.

99.    The ABCMR failed to review the sufficiency of the evidence established by the investigation to support CID's conclusions, and instead improperly and unreasonably required Plaintiff to provide new, additional evidence outside the scope of the original investigation that: 1) corroborated his unrebutted sworn testimony that he notified the Registrar about his new PCS Orders; or 2) demonstrated that the Registrar's failed to follow DDESS policy.

100.    Accordingly, no legal or factual basis supported the ABCMR's decision that credible evidence existed that Plaintiff provided false information on the enrollment application.

101.    The ABCMR's decision relied on factors which are not contemplated by the applicable regulation governing a request for amendment of an ROI (DoDI 5505.07) and offered an explanation for its decision that runs counter to the evidence on record such that it cannot be ascribed to a difference in view or agency expertise.

102.    Accordingly, the ABCMR's denial of Plaintiff's request to remove his name from the DCII was arbitrary and capricious, unsupported by substantial evidence, and contrary to law.

**V.    The Board's Decision To Deny Plaintiff's Request To Expunge The CRDA Was Arbitrary And Capricious Where It Ran Counter To The Evidence Presented.**

103.    Plaintiff restates and incorporates by reference Paragraphs 1 through 57 as if fully set forth.

104.    Plaintiff argued that it was error and injustice for the CID agent to complete the CRDA when he was not in Plaintiff's chain of command.

105.    The applicable regulation (Army Regulation 109-45) provides: "The battalion

- 21 -

commander or the first lieutenant colonel in the chain of command is responsible and accountable for completing DA Form 4833 with support documentation (copies of Article 15s, court-martial orders, reprimands, and so on) for all USACIDC investigations."

106.    The ABCMR conceded that the applicable regulation permitted only Plaintiff's chain of command to complete the CRDA, and that because the CID agent was not in Plaintiff's chain of command it was improper for him to complete the CRDA.  However, the Board stated "without the applicant's Naval record, or statement from his chain of command denying that this information was provided to the agent, there is no way to determine that an error or injustice exists."

107.    The ABCMR's reasoning in rejecting Plaintiff's argument turns the presumption of administrative regularity on its head.  The ABCMR argued that Plaintiff's commander may have delegated his authority to complete the CRDA to the CID agent; however, the applicable regulation does not permit the commander to delegate or assign that responsibility to anyone else.  The ABCMR's basis for denying relief is therefore inconsistent with the presumption administrative regularity and is otherwise unsupported.

108.    Accordingly, the ABCMR's rejection of Plaintiff's argument that it was error and injustice for the CID agent to complete the CRDA was arbitrary and capricious, unsupported by substantial evidence, and contrary to law.

**VI.    The Board's Failure To Decide Whether The ROI Should Have Been Referred To DFAS Was An Abuse Of Discretion Where All The Relevant Facts Were Before It.**

109.    Plaintiff restates and incorporates by reference Paragraphs 1 through 57 as if fully set forth.

110.    Plaintiff argued that it was error and injustice, and a violation of his constitutional right to due process, for CID to have referred the ROI to DFAS for collection.

111.   The ABCMR did not review the referral of the ROI to DFAS, mistakenly believing that aspect of Plaintiff's request for amendment was still pending an operational review by CID.

112.   The ABCMR's rational for not reviewing the referral of the ROI to DFAS is inconsistent with its review of the CRDA, which was also the subject of Plaintiff's request for operational review.  In any event, Plaintiff understood CID's April 9, 2013 response to the amendment request to include CID's response to the operational review, and that absent a statement to the contrary, the referral was presumed by CID to be legally sound.

113.   CID stated in its April 9, 2013 response that it was required by DoD Instruction 5505.02 to submit copies of all ROIs involving the loss of U.S. Government funds to DFAS.

114.   However, in fact DoD Instruction 5505.02 did not require or authorize CID to submit the ROI to DFAS.

115.   The determination of probable cause and referral of the ROI to DFAS violated Plaintiff's due process rights because it was done without any notice or an opportunity to be heard at a meaningful time and in a meaningful manner.

116.   The ABCMR's failure to review the referral of the ROI to DFAS was arbitrary and capricious, unsupported by substantial evidence, and contrary to law.

## RELIEF REQUESTED

Based on the foregoing, Plaintiff respectfully requests that the Court grant him the following relief:

(1)   Declare the ROI to be unlawful, null and void;

(2)   Order Defendant to expunge the ROI or otherwise amend it to reflect the offenses as "unfounded";

(3)   Order Defendant to remove Plaintiff from the DCII;

(4)     Declare the CRDA to be unlawful, null and void;

(5)     Order Defendant to expunge the CRDA;

(6)     Declare Plaintiff's debt of $44,200.00, plus accumulated penalties and interest, to be unlawful, null, and void;

(7)     Order Defendant to refund Plaintiff for money already unlawfully exacted through withholding of valid expense reimbursement;

(8)     Order Defendant to take all actions necessary to correct Plaintiff's credit reports to show that no lawful debt was owed or is owed, and to remove all references to the debt from his credit histories;

(9)     Order Defendant to pay all costs associated with this action;

(10)    Award Plaintiff attorney's fees incurred as a result of this action; and

(11)    Grant Plaintiff any other relief that the Court deems appropriate.

                           Respectfully submitted,


                           Christopher J. Code


                           By:


                                 /s/ Andrew K. Wible
                           _____
                           Andrew K. Wible, D.C. Bar No. 988391
                           awible@cohenmohr.com
                           William F. Savarino, D.C. Bar No. 386706
                           bsavarino@cohenmohr.com
                           COHEN MOHR LLP
                           1055 Thomas Jefferson Street, N.W.
                           Suite 504
                           Washington, D.C. 20007
                           (202) 342-2550
                           (202) 342-6147 - fax

                           *Attorneys for Christopher J. Code*

- 24 -