# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CHRISTOPHER J. CODE,<br>    Plaintiff<br><br>        v.<br><br>MARK T. ESPER[1],<br>    Defendant. | Civil Action No. 15-cv-31 (CKK) |

## MEMORANDUM OPINION
(December 19, 2017)

Plaintiff Christopher J. Code, a former Lieutenant in the Navy and a current member of the Navy Individual Ready Reserves, seeks judicial review in this case of a final decision of the Army Board for Correction of Military Records ("ABCMR"). In the challenged decision, the ABCMR denied Plaintiff's petition to correct his military records and to vacate a debt of $44,200 he owes to the United States Department of Defense ("DOD"). The gravamen of Plaintiff's petition to the ABCMR was that the United States Army Criminal Investigation Command ("CID") had incorrectly "titled"[2] him in a Report of Investigation ("ROI") that concluded that Plaintiff committed certain crimes. Specifically, the ROI concluded that Plaintiff fraudulently represented the nature of his orders on an official school application in order to make his children appear eligible for tuition-free education at a DOD school located in Puerto Rico. Plaintiff denies he did anything wrong.

---

[1] Mark T. Esper has been substituted as the Defendant in this case pursuant to Federal Rule of Civil Procedure 25(d).

[2] "Titling" means the placement of a person's name in the title block of a criminal investigation report.

Presently before the Court are Defendant's [19] Motion for Summary Judgment and Plaintiff's [20] Cross-Motion for Summary Judgment. Upon consideration of the pleadings,[3] the relevant legal authorities, and the record as a whole, the Court will GRANT-IN-PART and DENY-IN-PART both motions. Keeping in mind the narrow scope of its review under the Administrative Procedure Act ("APA"), the Court concludes that there was nothing arbitrary, capricious or contrary to law about the ABCMR's conclusion that there was sufficient evidence to support the CID's decision to title Plaintiff with the charges of Obtaining Services under False Pretenses and Making a False Official Statement. The Court also finds nothing arbitrary, capricious, or otherwise improper about the ABCMR's determination that the CID did not violate the Privacy Act by sharing its ROI with the Defense Finance and Accounting Service ("DFAS"). Nor will the Court disturb the ABCMR's finding that the CID did not commit error by valuing Plaintiff's debt using the tuition rates for the school at which Plaintiff's children were enrolled. The Court does, however, find that the ABCMR's refusal to take corrective action regarding a Commander's Report of Disciplinary or Administrative Action ("CRDA")—which all parties agree was completed by an individual who lacked authority to do so—was arbitrary and capricious and not in accordance with law. The Court will order that the CRDA be expunged.

---

[3] The Court's consideration has focused on the following documents:
- Def.'s Mot. for Summary Judgment, ECF No. 19 ("Def.'s Mot.");
- Pl.'s Opp'n to Def.'s Mot. for Summary Judgment and Cross-Mot. for Summary Judgment, ECF No. 20 ("Pl.'s Opp'n");
- Def.'s Reply in Support of Mot. for Summary Judgment and Opp'n to Pl.'s Cross-Mot. for Summary Judgment, ECF No. 22 ("Def.'s Reply"); and
- Pl.'s Reply in Support of Cross-Mot. for Summary Judgment, ECF No. 24 ("Pl.'s Reply").

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

# I. BACKGROUND

## A. Factual Background and Initial Administrative Proceedings

Plaintiff was issued Permanent Change of Station ("PCS") Orders on January 4, 2005, requiring him to report to Fort Buchanan in San Juan, Puerto Rico for a three year period beginning in August 2005 and lasting until July 2008. AR000264-67. Plaintiff's three children accompanied him to Puerto Rico and were enrolled in a DOD Education Activity ("DODEA") school at Fort Buchanan ("the Fort Buchanan School") for the 2005-2006 and 2006-2007 school years. AR000298. The Fort Buchanan School is tuition-free for certain individuals stationed in Puerto Rico.

In early 2007, Plaintiff was advised by a Navy detailer that "at some point before [his] current orders expired in July 2008, [he] would receive new permanent change station orders for someplace other than San Juan." *Id.* Desiring to keep his family in Puerto Rico, Plaintiff submitted a formal request for an extension of his orders, asking to remain in Puerto Rico through August 2008. AR000298; AR000269. Plaintiff's chain of command supported his request for an extension. AR000270-72. Plaintiff states that he "believe[d] that the request would be granted." AR000298.

It was not. In a letter dated April 26, 2007, Plaintiff's request was denied by Navy Personnel Command. AR000273. Nonetheless, four days later, on April 30, 2007, Plaintiff submitted an application to re-enroll his children in the tuition-free Fort Buchanan School in Puerto Rico for the 2007-2008 school year. AR000299. In the application, despite having been told that his orders would soon be changed and that he would be required to leave Puerto Rico in 2007, Plaintiff stated that his "current orders will expire on July 2008." AR000274. Plaintiff signed and certified that "the information provided on this form is true and correct." *Id.* He

claims that "[a]t the time [he] submitted the paperwork, [he] did not yet know that [his] request for extension had been denied and still believed that [his] extension request would be granted." AR000299. According to Plaintiff, his wife told the Registrar for the Fort Buchanan School that "there was a chance [Plaintiff] would receive new PCS orders prior to July 2008," but the Registrar "verbally advised" that Plaintiff's "children's eligibility to attend the Ft. Buchanan school for the 2007-2008 term was tied to [Plaintiff's] current orders." *Id.*

Plaintiff claims that he received the April 26, 2017 letter from Navy Personnel Command denying his request for an extension of his duty in Puerto Rico on or about May 8, 2017. The record contains a faxed copy of this letter with a heading that suggests that it was, in fact, transmitted on May 8. AR000306.

On May 23, 2007, Plaintiff received his official new PCS orders requiring him to leave Puerto Rico and report to Kingsville, Texas—the orders Plaintiff had already been informed of months before. AR000299; AR000280-83. The orders required that Plaintiff report to Texas by no later than June 2007. *Id.* Plaintiff claims that he immediately called the Fort Buchanan School Registrar and verbally told her about his new orders. AR000299. He states that he was never instructed to remove his children from the school or told that his children were no longer eligible. *Id.* Plaintiff reported to his new posting in Kingsville, Texas in June 2007. AR000248; AR000252.

On January 24, 2008, the CID discovered that Plaintiff's children were still enrolled in the Fort Buchanan School despite the fact that Plaintiff had moved to Texas. AR000246. They commenced an investigation.

Investigators interviewed the Registrar for the Fort Buchanan School. AR000247. The Registrar "was presented the scenario involving" Plaintiff. *Id.* She "advised that [Plaintiff's]

children could not attend the DOD school on Ft. Buchanan since the sponsor, [Plaintiff] was no longer assigned or stationed in Puerto Rico." *Id.* The Registrar also provided the investigators with a copy of Plaintiff's April 30, 2007 application for his children's enrollment at the Fort Buchanan School. *Id.*

Investigators also spoke with an unnamed source who informed them that Plaintiff's assignment in Puerto Rico was only a twenty-four month tour, ending in the summer of 2007. AR000248. This does not appear to have been an accurate description of Plaintiff's orders. As explained above, Plaintiff's tour in Puerto Rico was initially scheduled to last for three years, concluding in the summer of 2008. AR000264-67. The remainder of this witness' statement, however, appears to roughly align with the other evidence in the record. The witness stated that Plaintiff knew in early 2007 that he would be ordered to leave Puerto Rico by no later than August 2007. AR000248. The witness also recounted that "[s]ometime in Apr[il] 07, [Plaintiff] requested a one year extension in Puerto Rico, which was immediately denied and he was advised that he would be" required to change postings in June 2007. *Id.*

Next, an investigator met with the Assistant General Counsel for the DODEA. AR000256. During that conversation, the investigator stated that Plaintiff had falsely claimed on his children's school enrollment application that his orders would not expire until July 2008, and the Assistant General Counsel gave his opinion that Plaintiff was "not eligible to enroll his three children at the Fort Buchanan, Puerto Rico school." *Id.*

On July 29 and 30, 2009, an investigator corresponded with the individual who issued the letter to Plaintiff denying his request to extend his orders in Puerto Rico. AR000284. That individual stated that she thought she had e-mailed or faxed a copy of the letter to Plaintiff "at the time the letter was signed out." *Id.* Regardless, she stated that "[i]f you are trying to prove

that he intentionally defrauded the local school by saying he thought his extension was approved, I can affirm with absolute confidence that I personally told him otherwise within no more than a few days after the date on the letter." *Id.*

The CID issued its final ROI regarding Plaintiff's children's enrollment at the Fort Buchanan School on January 12, 2011. It concluded that its investigation had:

> established probable cause to believe [Plaintiff] committed the offense of False Official Statement and Larceny when he falsified documentation by registering his three children in the [Fort Buchanan School] for a year while he was not assigned to the geographic area. [Plaintiff] knowingly falsified these [ ] documents 4 days after his Permanent Change of Station (PCS), extension request was denied, transferring him from Puerto Rico to Kingsville, TX. The loss to the U.S. Government was $44,200.00.

AR000242; *see also* AR000005-06.

Despite the conclusions of the CID, the United States Attorney's Office in San Juan declined to prosecute Plaintiff and referred any action to the DOD and Plaintiff's chain of command. AR000242. No disciplinary actions were taken against Plaintiff by his chain of command. AR000006.

Prior to the issuance of the final ROI, an individual referred to as the "Agent in Charge" of the CID Florida Fraud Resident Agency completed a CRDA regarding the allegations against Plaintiff. AR000316-21. The form indicates that administrative action had been taken against Plaintiff for the offenses of Larceny and False Official Statement, and that Plaintiff was required to pay restitution of $44,200.00. AR000317-19. The individual who filled out this form was not in Plaintiff's chain of command.

Also prior to the issuance of the final ROI, on or around September 30, 2010, Plaintiff received a letter from the DFAS—a DOD component with official duties related to collecting debts owed to the Department—stating that he owed a debt to the DOD of $44,200. AR000308-

09; AR000005. Plaintiff claims that this letter was the first notice he had received of his alleged debt or the charges against him. The record indicates that the CID had presented "documentation and a structured timeline of events" to the DFAS, and that the DFAS had accepted financial responsibility for the $44,200 loss and initiated procedures to collect it from Plaintiff. AR000242; AR000006. When Plaintiff protested the debt to the DFAS, he was informed that the debt would remain valid unless the CID overturned the determinations in its ROI. AR000009.

Accordingly, Plaintiff submitted a formal request to the CID asking it to amend the ROI. AR000232-38. Plaintiff requested that the ROI be amended to indicate that the charges against him were unfounded, that his name be deleted from the title block of the ROI, and that Plaintiff accordingly be removed from the "Defense Central Index of Investigations." AR000232. Plaintiff argued that "there was no credible evidence that [he] committed any crime." AR000233. He also requested that an "operational review" be undertaken in connection with the referral of the ROI to the DFAS. AR000232-33. On April 9, 2013, the CID issued a letter denying Plaintiff's requests. AR000224-25.

Plaintiff then submitted a petition for correction of his military records to the ABCMR. AR000212-23. Plaintiff requested the following relief from the ABCMR: that the CID's ROI be expunged or alternatively amended to show the offenses as "unfounded," that the CRDA filed with respect to Plaintiff be expunged, and that the debt assessed by the DFAS be cancelled. AR000212-23.

The ABCMR denied all of Plaintiff's requests. AR000199-209.

**B. Procedural History and Subsequent Administrative Proceedings**

Plaintiff timely filed suit under the APA challenging the ABCMR's decision. Compl., ECF No. 1. Plaintiff's original complaint alleged that the ABCMR had committed a number of "material errors." *Id.* ¶ 56.

After reviewing Plaintiff's complaint, Defendant filed a motion for voluntary remand, requesting that the ABCMR have the opportunity to "address the inadequacies of its . . . decision raised by Plaintiff." Def.'s Opposed Mot. for Voluntary Remand, ECF No. 10, at 3. Plaintiff opposed the remand because "the purported grounds for remand are largely superficial and ultimately irrelevant to the gravamen of the Complaint." Pl.'s Opp'n to Def.'s Mot. for Remand, ECF No. 11. Despite Plaintiff's opposition, the Court granted Defendants' motion for voluntary remand. *See* Oct. 19, 2015 Mem. Op. and Order, ECF Nos. 12-14.

The ABCMR subsequently reconsidered the evidence provided by Plaintiff and issued a new decision dated February 1, 2017. AR000001. In its new decision, the ABCMR agreed that the charge of "larceny" did not apply to Plaintiff's conduct and replaced it with "obtaining services under false pretenses." AR000004. However, the ABCMR determined that the evidence was insufficient to further amend or expunge the ROI, and denied Plaintiff all other relief requested. AR000004.

Plaintiff filed an Amended Complaint shortly thereafter, and the parties have now filed cross-motions for summary judgment. Those motions have been fully briefed and are ripe for resolution.

## II.  LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." However, "when a party seeks review of agency action under the APA [before a district court], the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson,* 269 F.3d 1077, 1083 (D.C. Cir. 2001). Accordingly, "the standard set forth in Rule 56[ ] does not apply because of the limited role of a court in reviewing the administrative record . . . . Summary judgment is [ ] the mechanism for deciding whether as a matter of law the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Southeast Conference v. Vilsack*, 684 F. Supp. 2d 135, 142 (D.D.C. 2010).

The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." *FCC v. Fox Television Stations, Inc.,* 556 U.S. 502, 513 (2009). It requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "This is a 'narrow' standard of review as courts defer to the agency's expertise." *Ctr. for Food Safety v. Salazar*, 898 F. Supp. 2d 130, 138 (D.D.C. 2012) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)). However, an agency is still required to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (internal quotation omitted). "Moreover, an agency cannot 'fail[ ] to consider an important aspect of the problem' or 'offer[ ] an explanation for its decision that runs counter to the evidence' before it." *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 57 (D.C. Cir. 2015) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43).

The D.C. Circuit has held that in cases challenging decisions of military boards, like the ABCMR, "an unusually deferential application" of the APA standard applies. *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989). Plaintiff argues that this heightened deference should not apply in this particular case because "the issue before the court does not involve a military judgment requiring military expertise, but rather [a] review of the [ABCMR's] application of a procedural regulation governing its case adjudication process." *Kreis v. Sec'y of Air Force*, 406 F.3d 684, 686 (D.C. Cir. 2005). Defendant disagrees, arguing that this is precisely the type of case where unusually deferential treatment is warranted. Although the Court is skeptical that the ABCMR's decision in this case—dealing as it did with allegations of criminal conduct relating to Plaintiff's *military* orders, interpretations of *military* regulations and the use of *military*-funded schools—did not involve any "military judgment requiring military expertise," the Court need not and does not resolve this dispute. All of the Court's legal conclusions, explained below, would be the same regardless of whether it applied the normal deferential APA standard or the heightened "unusually deferential" standard applicable to ABCMR decisions. *See Coburn v. Murphy*, 827 F.3d 1122, 1125 (D.C. Cir. 2016) (declining to decide whether Army decision warranted heightened deference under *Kreis* because "applying the ordinary standard of review due to any agency decision under the APA, we conclude that the Army acted lawfully").

### III. DISCUSSION

Applying the narrow and deferential APA standard to the record in this case, the Court will reject most of Plaintiff's challenges to the ABCMR's decision. First, the ABCMR's conclusion that there was credible evidence that Plaintiff committed the offenses of Obtaining Services under False Pretenses and Making a False Official Statement was not arbitrary or

capricious.  Second, the ABCMR's determination that the CID did not violate the Privacy Act by sharing its ROI with the DFAS was similarly not arbitrary, capricious, or contrary to law.  Third, the Court will not disturb the ABCMR's decision that the CID did not commit error by valuing Plaintiff's debt using the tuition rates for the school at which Plaintiff's children were, allegedly, improperly enrolled.  However, the Court does find that the ABCMR's refusal to take corrective action regarding a CRDA that all parties agree was completed by an individual without authority to do so was arbitrary and capricious and not in accordance with law.

**A.  The ABCMR's Decision Not to "Untitle" Plaintiff with the Charges of  Obtaining Services under False Pretenses and Making a False Official Statement**

The first question in this case is whether the ABCMR's decision that there was credible evidence that Plaintiff committed the crimes of Obtaining Services under False Pretenses and Making a False Official Statement was arbitrary and capricious or otherwise contrary to law.  As described in further detail below, although Plaintiff may reasonably disagree with the ABCMR, that body's decision addressed Plaintiff's arguments in a sound, reasoned manner, and came to a conclusion that was rationally based on the evidence in the record.  The Court cannot overturn it.

The Court begins by noting that the ABCMR applied the correct standard of review.  Although neither party has focused extensively on this issue in their briefing, it is important to clarify the standard that the ABCMR was required to apply.  The standard is set forth in Department of Defense Instruction 5505.7, entitled "Titling and Indexing Subjects of Criminal Investigations in the Department of Defense."  That instruction states that "[t]he DOD standard that shall be applied when titling and indexing subjects of criminal investigations is a determination that credible information exists indicating that the subject committed a criminal offense."  Def.'s Mot., Ex. A ("DODI 5505.7"), ¶ 6.3.  "Credible Information" is defined by DODI 5505.7 as "[i]nformation disclosed or obtained by an investigator that, considering the

source and nature of the information and the totality of the circumstances, is sufficiently believable to lead a trained investigator to presume that the fact or facts in question are true." *Id.* ¶ E1.1.1. When a titling decision is challenged administratively, the reviewing official—in this case the ABCMR—"shall consider the investigative information available at the time the initial titling[ ] decision was made." *Id.* ¶ 6.9.

In sum, the question before the ABCMR in this case was whether, based on the investigative information available to the CID during its investigation, there existed sufficiently believable information that could lead an investigator to conclude that Plaintiff had committed the crimes of Obtaining Services under False Pretenses and Making a False Official Statement. It is also important to note that, by regulation, the ABCMR was required to "begin[ ] its consideration of [Plaintiff's] case with the presumption of administrative regularity," and it was Plaintiff who had "the burden of proving an error or injustice by a preponderance of the evidence." 32 C.F.R. § 581.3(e)(2). That is, it was Plaintiff's burden to demonstrate to the ABCMR that the CID had committed some error, or that some injustice had occurred.

Plaintiff briefly argues that instead of the credible information standard discussed above, the ABCMR should have applied a "probable cause" standard found in a regulation that is applicable specifically to the Army. *See* 32 C.F.R. § 635.12. The Court disagrees. Department of Defense Instruction 5505.7 was the DOD regulation applicable to titling decisions in effect at the time of the ABCMR's decision in this case. It provided the applicable standard. As another district court in this Circuit has found under very similar circumstances, to the extent the Army regulation Plaintiff cites conflicts with DODI 5505.7, a DOD regulation, it is the Army regulation that "must give way." *Escobedo v. Green*, 602 F. Supp. 2d 244, 250 (D.D.C. 2009) (rejecting argument that the "ABCMR should have applied [a] probable cause standard" instead

of "the credible information standard set out in DoD Instruction 5505.7.").

Having clarified the standard applicable to the ABCMR's review, the Court moves on to analyze whether that standard was applied in an arbitrary or capricious manner. Plaintiff claims that there was no credible evidence in the record that Plaintiff had made any false representation or acted intentionally—two requirements of the crimes the ROI states that Plaintiff committed. Pl.'s Opp'n at 11-18. The CID and the ABCMR have both disagreed with Plaintiff on this point, and the Court is not prepared to disturb those conclusions. Plaintiff stated on his children's school enrollment application that "I am active duty and my current orders will expire on July 2008." AR000274. The CID and the ABCMR have both concluded that this statement was a purposeful misrepresentation of the true nature of Plaintiff's orders because, at the time he made this statement, Plaintiff knew that his "current orders" were actually going to "expire" in the near future, and that he was going to be required to leave Puerto Rico long before 2008. The ABCMR explained in its decision that this conclusion was supported by credible evidence. It found that:

> the CID file is . . . replete with evidence that the applicant did know he shortly was to be moved from Puerto Rico. A witness interview with the Navy assignments officer indicates the applicant knew well in advance that he would be changing duty stations sometime in the summer of 2007. This is confirmed by his many requests to be extended at For Buchanan. There is also evidence that, before he began submitting enrollment paperwork, he was notified orally and/or in writing by a Navy assignments officer that his request to extend his duty tour in Puerto Rico had been denied. The record also has discloses that he physically arrived in Texas in June 2007, months before the beginning of the 2007-2008 academic year began at the Fort Buchanan school. The record further indicates he made no effort to dis-enroll his children when he knew, or reasonably should have known, that his change of station orders taking him to Texas had the obvious effect of making him and his family ineligible for tuition-free education at the Fort Buchanan school. Such evidence indicates, at best, a regrettable lack of candor on the part of a military officer and, at worst, a criminal intent to defraud.

AR000037-38.

This analysis was not arbitrary or capricious.[4]  The ABCMR appears to have responded to all of Plaintiff's arguments, considered all of the evidence in this case, and provided a reasoned explanation of its decision that is rationally related to the evidence before it.  The ABCMR rightly noted that at the time Plaintiff filled out his children's enrollment paperwork, he had already been told that his orders were going to be changed before 2008 and that he would be required to leave Puerto Rico.  The ABCMR and the CID appear to have concluded that, regardless of whether the official documentation of that change had yet reached Plaintiff, the fact that Plaintiff undisputedly had been told that this change was coming constituted credible information that Plaintiff was not being truthful when he stated that his "current orders" would not "expire" until July 2008.  Moreover, the CID investigators collected at least some evidence that suggested—even if it did not prove conclusively—that Plaintiff had been explicitly told that his request to extend his orders in Puerto Rico through 2008 had been denied before he completed his children's application.  Finally, the investigators were aware that, despite the fact that Plaintiff had moved to Texas, Plaintiff's children were still enrolled in the Fort Buchanan School in Puerto Rico.  They were told by the Registrar of the Fort Buchanan School that, under those circumstances, children would not be eligible to attend the school.  The ABCMR did not act arbitrarily or capriciously by concluding that this evidence, viewed in its totality, was sufficient to support the CID's findings.

The Court acknowledges that Plaintiff vigorously disputes this evidence and that there is contradictory evidence in the record.  For example, Plaintiff complains that one witness

_____

[4] The ABCMR decided that Plaintiff was originally incorrectly titled with the crime of "larceny," and amended the CID's decision such that Plaintiff would instead be titled with the crime of "Obtaining Services under False Pretenses."  AR000004.  This change indicates that the ABCMR thoughtfully considered Plaintiff's arguments and was willing to make changes where it deemed it appropriate to do so.

statement that the CID and the ABCMR relied on was taken "more than *two years* after the

incident" and therefore is not "credibl[e]" and "must yield to [Plaintiff's] sworn testimony" that

rebuts it.  Pl.'s Opp'n at 16 (emphasis in original); Pl.'s Reply at 5.  The Court also

acknowledges Plaintiff's more general arguments that his supposed innocence would have been

discovered if only the CID had investigated further, asked additional questions, or contacted

Plaintiff directly.[5]  Although perhaps persuasive in the abstract, these arguments are misguided in

this APA lawsuit.  The scope of the Court's review at this point is merely to determine whether

the ABCMR's decision that the titling of Plaintiff was supported by credible information was

arbitrary and capricious.  It is not the role of the Court to draw its own conclusions from the facts

or to determine Plaintiff's guilt or innocence of the charges against him.  To the extent there are

factual disputes in this case, the ABCMR correctly noted that it was the role of the CID

investigators to "assess reliability of the relevant documents and assess the credibility of the

relevant witnesses."  AR000038.  Plaintiff's disagreement with those assessments is not

sufficient grounds for this Court to overturn the ABCMR's decision.  *See Coburn v. McHugh*, 77

F. Supp. 3d 24, 31 (D.D.C. 2014), *aff'd sub nom. Coburn v. Murphy*, 827 F.3d 1122 (D.C. Cir.

---

[5] Plaintiff's argument that "the investigative record lacks any evidence whatsoever that [Plaintiff] failed to notify the DOD school once his new PCS orders were issued," Pl.'s Opp'n at 16, is not helpful to his case.  To the extent the ABCMR concluded that Plaintiff had not satisfied his burden of demonstrating that he had contacted the Registrar, and considered his failure to do so when determining that Plaintiff acted with an intent to defraud, that conclusion was neither arbitrary nor capricious.  The Court understands that there are factual disputes as to whether Plaintiff did or did not contact the Fort Buchanan School Registrar.  Plaintiff testified that he had, but the ABCMR did not credit that testimony in light of its presumption that, had Plaintiff contacted the Registrar, she would have followed protocol and told him that his children were ineligible.  There is also evidence in the record that investigators told the Registrar about the basic facts of Plaintiff's case, and she stated that under the circumstances, she would have concluded that Plaintiff's children were ineligible.  The Court will not resolve these disputes *de novo*, but instead concludes that there was nothing about the ABCMR's resolution of them that violates the APA.  Regardless, it does not appear to the Court that this fact was essential to the ABCMR's conclusion.

2016) ("Put simply, a plaintiff's disagreement with the ABCMR's decision is not a valid basis for this Court to set aside an agency action supported by the record.").

Before concluding, the Court must briefly address a number of other miscellaneous arguments Plaintiff makes about the CID's investigation. In broad strokes, Plaintiff complains that the CID's "investigation was conducted in an unfair and improper manner that was designed to support a pre-determined outcome." Pl.'s Opp'n at 10. Plaintiff argues that the ABCMR "disregarded the inherently prejudicial manner in which the CID investigator conducted critical interviews with key witnesses." *Id.* at 19. For example, Plaintiff argues that there was something improper about an investigator "present[ing] the scenario involving" Plaintiff to the Registrar of the Fort Buchanan School to procure her opinion about Plaintiff's children's eligibility, as opposed to asking the Registrar about Plaintiff and his children by name. *Id.* Plaintiff also argues that the investigator presented the Assistant General Counsel for the DODEA with incorrect information during their interview. *Id.*

The ABCMR considered and rejected these arguments. It found that the CID's investigation was conducted in accordance with applicable regulations and that there was "no evidence CID improperly gathered evidence" and "no manifest error exists relative to the way the investigation was conducted." AR000037. Moreover, the ABCMR noted that at Plaintiff's counsel's request, "CID senior officials reexamined the investigation and confirmed the case investigators' determination." *Id.* The Court has reviewed the portions of the record Plaintiff refers to and similarly finds nothing improper about the actions of the investigators. As Plaintiff concedes, a presumption of regularity applies to a review of "the actions of the CID in conducting its investigation." Pl.'s Opp'n at 17. The ABCMR reasonably concluded that

nothing in the notes of the investigation in this case indicated any sort of error or injustice that would overcome this presumption.

Finally, Plaintiff also complains about an "advisory opinion" the ABCMR sought and received from the CID during the voluntary remand of this case. Plaintiff claims that the advisory opinion contained mistakes and addressed issues beyond the scope of the ABCMR's inquiry. Pl.'s Opp'n at 18-19. Plaintiff's argument goes nowhere. The decision challenged in this case is that of the ABCMR. There was nothing improper about the ABCMR seeking input from the CID when considering Plaintiff's petition. To the extent there was anything wrong or extraneous in the CID's submission to the ABCMR, it is irrelevant unless Plaintiff demonstrates that it rendered *the ABCMR's* decision arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. Plaintiff has not made such a showing. Plaintiff fails to point to any way that the allegedly incorrect or extraneous CID opinions were relied on by the ABCMR or infected that body's decision with any error.

In sum, the Court finds that the ABCMR's decision not to "untitle" Plaintiff from the ROI or otherwise amend the ROI was not arbitrary, capricious, or otherwise contrary to law. Defendant will be granted summary judgment on this issue.

## B. The ABCMR's Finding that the Referral of the ROI to DFAS Was Exempt from the Privacy Act

The next dispute in this case revolves around the ABCMR's decision that the CID did not violate the Privacy Act by providing the ROI regarding Plaintiff to the DFAS. The Privacy Act states that, absent consent from the individual to whom a record pertains, "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency." 5 U.S.C. § 552a(b). "To this general prohibition there are several exceptions, one of which is the 'need-to-know' provision of § 552a(b)(1)." *Bigelow v.*

*Dep't of Def.*, 217 F.3d 875, 876 (D.C. Cir. 2000). This provision allows disclosure "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." 5 U.S.C. § 552a(b)(1). When considering a claim that the "need to know" exemption applies, "[w]hat must be determined . . . is whether the official examined the record in connection with the performance of duties assigned to him and whether he had to do so in order to perform those duties properly." *Bigelow*, 217 F.3d at 877.

The ABCMR concluded that the DFAS had a need to receive the ROI in order to perform its official duties.[6] The DFAS is an agency within the DOD. It is responsible for the Department's accounting and financial functions. Def.'s Mot. at 5 n.2. Part of its official duties include being "a debt handler (collector, essentially) for military departments." AR000087. In the ABCMR's view, the CID's investigation into Plaintiff was conducted at the behest of the DOD. When the CID completed its report of that investigation, which concluded that Plaintiff owed a debt to the DOD, it gave the report to the DOD's debt-collector, the DFAS, so that the DFAS could perform its official duties by collecting that debt from Plaintiff. AR000032 ("DFAS ha[s] an ongoing requirement to be informed about fraud investigations in order to carry out its . . . debt collection missions"); *id.* (reasoning that "debt recoupment" is "indisputably within DFAS's sphere of responsibility."). As such, the ABCMR reasoned that the need to know exception to the Privacy Act applied.

The ABCMR provided a reasoned explanation of how it reached its conclusion based on the record before it. The ABCMR's conclusion that the CID's investigation into Plaintiff's

---

[6] The ABCMR also appears to have concluded that the "routine use" exception to the Privacy Act applied. AR000029. Defendants do not make any serious attempt to defend the ABCMR's decision on this ground, and the Court accordingly has not relied on this Privacy Act exception in its analysis.

alleged conduct was undertaken to further DOD purposes was in part based on Department of

Defense Instruction 5505.2, entitled "Criminal Investigations of Fraud Offenses," which states

that "[i]t is DOD policy that all allegations of fraud involving programs, persons, and

organizations affiliated with the Department of Defense shall be thoroughly and timely evaluated

and, when indicated, investigated." Def.'s Mot., Ex B ("DODI 5505.2"), ¶ 4.1. To this end,

DODI 5505.2 states that "[f]raud investigations conducted by the Military Criminal Investigative

Organizations (MCIOs) [of which CID is one] are undertaken for the primary purpose of

furthering a function of the Department of Defense." *Id.* ¶¶ 4.4, E2.1.3. As it relates to this case,

the CID and other MCIOs are specifically charged by the DOD with investigating fraud

involving "[a]ll DOD dependent schools outside the Continental United States." *Id.* ¶ E3.2.8.

The instruction defines "fraud" as including "[a]ny intentional deception designed to deprive the

United States unlawfully of something of value or to secure from the United States a benefit,

privilege, allowance, or consideration to which he or she is not entitled." *Id.* ¶ E2.1.2. The

record also contained a 2004 Memorandum of Agreement ("MOA") between the DFAS and CID

that establishes policies and procedures for the effective and timely collection of debts by the

DFAS owed to the government due to fraud uncovered in CID investigations. AR000058. On

the basis of this record, the ABCMR's analysis of the Privacy Act issue in this case was not

arbitrary, capricious, or otherwise contrary to law.

Plaintiff argued to the ABCMR, and now argues to this Court, that the 2004 MOA does

not apply to the precise facts of his case because it references "army personnel" (Plaintiff was a

Navy officer) and because it only applied to instances of "fraud and larceny of government-

appropriated funds" (a phrase Plaintiff contends does not encompass the conduct alleged in this

case). The ABCMR disagreed and interpreted the MOA to apply to the facts of Plaintiff's case.

The ABCMR's interpretation of the MOA warrants deference. *See Sharps v. Green*, No. CIV.A. 07-36 (RMC), 2007 WL 1655882, at *5 (D.D.C. June 7, 2007) (holding that the Army's interpretation of a policy laid out in an Army Circular was entitled to deference and that the ABCMR's action based on that interpretation was not arbitrary or capricious). Regardless, Plaintiff's argument misses the point. The MOA supports the ABCMR's conclusion that the DFAS has official debt-collection duties with respect to fraud uncovered in ROIs, and accordingly has a need to receive those ROIs, even if the particular MOA in the record is not precisely applicable to the situation in this case. That document still suggested to the ABCMR that, in general, the DFAS receives ROIs from CID in order to perform its official duties. AR000034 ("The pertinence of the MOA would be unaffected even if counsel's construction of [that document] were correct. This is so because the relevant effect of the MOA for purposes of this case is that it notified CID, and articulated to CID, DFAS' need to know about fraud investigations that might trigger in-service debt recoupment.").

In sum, the ABCMR's decision that the CID did not violate the Privacy Act by providing the ROI to the DFAS was not arbitrary, capricious, or contrary to the law. The ABCMR considered all of Plaintiff's arguments about this issue and rejected them in a lengthy, reasoned decision that was rationally related to the record before it. Defendant will be granted summary judgment on this issue.

## C. The ABCMR's Decision to Uphold the Amount of Plaintiff's Debt

Next, Plaintiff argues that the ABCMR's decision to uphold the *amount* of Plaintiff's debt was arbitrary and capricious. The ABCMR concluded that Plaintiff's children were not entitled to attend the Fort Buchanan School once Plaintiff left Puerto Rico because, pursuant to Department of Defense Instruction 1342.26, Plaintiff's children's eligibility was based on

Plaintiff's being "assigned permanent living quarters on a military installation in the territory." AR000035-36. By enrolling them despite their ineligibility, the CID determined that Plaintiff caused a $44,200 loss to the government. AR000036. This value was calculated based on the tuition rates that DODEA charges in contexts where the Fort Buchanan School is not tuition-free (*e.g.*, when the children of employees of other agencies attend the school). *Id.* The ABCMR concluded that the CID's calculations were not inappropriate or contrary to law. *Id.*

Plaintiff disagrees with that conclusion. Plaintiff argues that the use of the tuition rate to determine how much he owes the government is inappropriate because the Fort Buchanan School does not accept tuition from individuals. Pl.'s Opp'n at 26. Moreover, he contends, there is no evidence that the enrollment of his children prevented any other children from enrolling, and therefore the loss should be calculated, if at all, based on the marginal cost of educating three children the DOD otherwise would not have. *Id.* at 27. Plaintiff appears to suggest that this cost would be negligible.

The ABCMR rejected Plaintiff's arguments about the valuation of his debt because he failed to satisfy his burden of demonstrating any legal or factual error or injustice associated with the CID's calculation. The ABCMR's decision was not arbitrary or capricious. To the contrary, the Court agrees with the ABCMR that the method used to calculate Plaintiff's debt was completely reasonable. Plaintiff did not provide any authority that would require his debt to be valued differently, nor did he provide any factual support for his suggestion that the amount of his debt should have been negligible.[7] The ABCMR also reasonably concluded that Plaintiff had

---

[7] Plaintiff briefly argues that the valuation of his debt might be inappropriate in the context of sentencing a criminal defendant, but that was clearly not the context in which Plaintiff's debt was calculated. Plaintiff provides no explanation for why the rules of criminal sentencing would be relevant here.

not satisfied his burden of demonstrating any injustice, given that it was "unclear how justice and equity would be served if [Plaintiff] were permitted to evade 100 percent of the financial responsibility for services he wrongfully received." AR000035-36. These conclusions were not arbitrary, capricious, or contrary to law, and Defendant will accordingly be granted summary judgment on this issue.

### D. The ABCMR's Decision Not to Expunge the CRDA

Finally, there is one aspect of the ABCMR's decision that the Court does find to be arbitrary and capricious and contrary to law: its refusal to take corrective action with respect to the CRDA indicating that administrative action had been taken against Plaintiff. There is no dispute that the applicable regulation required that this CRDA be completed by Plaintiff's commander. There is also no dispute that the CRDA in this case was *not* completed by Plaintiff's commander. As Plaintiff has pointed out to the ABCMR and now to this Court, it is clear from the face of the CRDA that it was completed by a CID agent.

The ABCMR acknowledged that this violates the "applicable regulation," but denied Plaintiff's request nonetheless. AR000014. It wrote that "without the applicant's Naval record, or statement from the chain of command denying that this information was provided to the agent, there is no way to determine that an error or injustice exists." *Id.* In other words, the ABCMR found that the form was filled out by an individual without authority to do so, but refused to take any action because there remained the possibility that a person with that authority had directed that the form be completed. Defendant contends that this decision was correct because Plaintiff had the burden of demonstrating an error or injustice to the ABCMR, and had to overcome the "presumption of regularity." Def.'s Mot. at 14-15.

The standard of review under the APA is narrow and deferential, but the Court agrees with Plaintiff that this argument is "a bridge too far." Pl.'s Opp'n at 28. Although Defendant is correct that Plaintiff had the burden of proof and that a presumption of regularity applies, Plaintiff overcame his burden when he presented undisputed evidence that an "error" had occurred: that the CRDA had been completed by an individual without authority to do so. There was nothing at all in the record to suggest that the CRDA had been filled out by this individual at the direction of anybody else. Nor has Defendant pointed to any regulation that would allow for such delegation. This was sheer speculation on the part of the ABCMR. Plaintiff's burden does not require him to produce evidence negating every possible hypothetical explanation for what is clearly an error. This aspect of the ABCMR's decision was arbitrary and capricious. *See Haselwander v. McHugh*, 774 F.3d 990, 996 (D.C. Cir. 2014) ("when a [military records] correction board fails to correct an injustice clearly presented in the record before it," its action is contrary to its statutory mandate and accordingly arbitrary and capricious) (internal quotation omitted). The Court will grant summary judgment in Plaintiff's favor on this issue and order that this document be expunged.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS-IN-PART and DENIES-IN-PART both parties' motions for summary judgment. The Court grants Plaintiff's motion and denies Defendant's motion with respect to the CRDA. By separate order, the Court will require that record to be expunged. The Court grants Defendant's motion and denies Plaintiff's motion on all other issues. This case is dismissed. An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge